[No. 18188. Department One. January 25, 1924.]

DIELMORE VALVE COMPANY, *Respondent,* v.
MARY McLAREN, *Appellant.*

DIELMORE VALVE COMPANY, *Respondent,* v.
HARRIET McLAREN, *Appellant.*[1]

CORPORATIONS (28)—STOCK—REDUCTION—DIVIDENDS FROM CAPITAL
—EVIDENCE—SUFFICIENCY. That a corporation paid dividends out of
its capital stock· is not established by the testimony of an expert
bookkeeper that the company lost money during the year in ques-
tion, based upon his arbitrary adoption of a sum for depreciation,
when the fact is established that it had the same capital assets at
the end as at the beginning of the year, and in addition actually
had money on hand to pay the dividends. .

Appeal from judgments of the superior court for
King county, Frater, J., entered April 14, 1923, upon
findings in favor of the plaintiff, in an action to recover
dividends, tried to the court. Reversed.

*Shank, Belt & Fairbrook,* for appellants.

*Wright & Catlett,* for respondent.·

MAIN, C. J.—Two actions are here consolidated,
brought against former stockholders of the Dielmore
Valve Company, a corporation, to recover dividends
which it is alleged were paid to them out of the com-
pany's capital. The dividends were in the usual form
and were paid to all the stockholders of record in the
years 1919 and 1920. When it was incorporated, the
company owned certain patent rights which were car-
ried at a valuation approximately equal to the par
value of the company's capital stock.

The company did business during the years 1917,
1918, 1919, 1920, and 1921, during which time the appel-
lants were stockholders. In September, 1921, they dis-

[1] Reported in 222 Pac. 498.

posed of their stock and the company came into the control of its present officers, who theretofore had had no connection with the company and who are, on behalf of the company, prosecuting this action to recover dividends paid, such recovery being sought on the theory that the company made no net earnings during the years 1919 and 1920 out of which the dividends were payable, but that they were, as a matter of fact, paid out of the capital, thus reducing it. The dividends paid during the year 1919 amounted to $19,092, and these the court denied recovery on, but did allow recovery of the portion of the dividends paid in 1920 to the appellants, the total dividends for that year being $6,296. The corporation was organized in 1917 with a capital of $50,000, and apparently was not engaged in any business other than selling articles manufactured by other concerns under patent rights owned by the respondent. There were no witnesses called to testify as to any matter connected with the company's business, and nothing was produced except the books of the company and the testimony of an expert accountant.

The record establishes clearly that, during the world war, this company, like many others, enjoyed a business entirely out of proportion to what it had during normal times, for the record shows that the sales of the company in 1917 amounted to but $1,359.77; in 1918 they had risen to $19,055.65; in 1919 to $66,285.89, only to drop in 1920 to $19,174, and for a fractional part of the year 1921 (the only part reported) there was a further substantial decrease in the amount of business.

Many legal obstacles are urged against the maintenance of an action such as this, but upon the facts it would seem that the respondent is not entitled to recover, and therefore it becomes unnecessary to discuss the pure questions of law. Nor is it necessary to de-

termine whether the company's books were properly put in evidence.

It is to be borne in mind that we are not concerned here with the rights of creditors, as the record does not show that the respondent has any creditors, or had any at the time of the declaration of dividends, nor is this an action brought by dissenting stockholders seeking to have enjoined or set aside what is contended to be an illegal declaration of dividends.

Assuming that a corporation suing purely in its own right can recover from an individual money paid to that individual as a stock dividend, regularly paid to such individual, if the dividend has been taken out of the capital stock, even in the absence of any claim that the corporation has any creditors who may have been adversely affected by such declaration, the evidence here does not show that, as a matter of fact, the dividends for the year 1920 (which is the one remaining for consideration by this court) were declared out of the capital stock. The only testimony in the record introduced on behalf of either party which bears upon the question before us is that of an expert bookkeeper who testified not only to what the books showed, but as to what, in his estimation as an expert, they should show. From his statement it is made to appear that, instead of there being net earnings in 1920, there was, as a matter of fact, a deficit. It is customary to find expert bookkeepers testifying that corporations have made a profit, when an examination of the accounts of such corporations discloses that the profits exist merely in the books and that there is no money in the bank to correspond therewith. In this case it is the contrary. The corporation did a considerable business in 1920, had the same capital assets at the close of the year as at the beginning, and had cash on hand with which to pay dividends. Yet the expert testifies the company

lost money. After it is all said and done, the practical answer to the question of whether a corporation has profited or lost can be better determined by the disclosure whether it has any money at the end of the year than by the more or less arbitrary arrangement of bookkeeping figures. An examination of this corporation at the end of 1920 shows that it had not only paid 'the dividends which are now sought to be recovered, but that it had no creditors of any consequence and that, as was testified by the respondent's vice-president, "there were a few small bills against the company and there was a small amount of cash in the treasury, approximately balancing each other," and that the company possessed everything at that time that it had when it commenced business, and was in consequence in that regard in the same situation as it had been at any previous time, except that its prospects were not so bright for the reason that the war was over.

The truth of the matter is that the present stockholders and officers of the respondent invested in the stock of a corporation whose days of opulence were past and which was about to fade into the sere and yellow leaf, but that does not justify them in recalling the fruitful autumn at the expense of the stockholders who had partaken of the harvest. The suggested procedure would result in the redistribution of war profits, but cannot be sanctioned for the sole reason that it is novel.

In order to show a bookkeeping deficit for 1920, resort is had to that device which covers such a multitude of accounting mysteries—depreciation. The expert, without any knowledge of the company's business, the value of its patent rights or any of its other property, with no knowledge of even how long the patents were to continue in existence, arbitrarily set

down a figure for depreciation. This will hardly overcome actual cash balances. The record is entirely silent as to what the actual depreciation was, if any, and in the record there is no showing of any valuation of the assets at any time and, so far as we are able to determine, they may now be worth not only what they originally were, but many times that amount.

With the company doing the business in 1920 which is shown by the figures, and having the actual cash with which to pay the dividends, it would be the merest guess work for this court to say, as a matter of fact, the dividends were not paid from the profits.

There being an entire failure of proof that the dividends were not paid from profits, the judgments are reversed and the actions dismissed.

HOLCOMB, MACKINTOSH, TOLMAN, and PARKER, JJ., concur.